FILED
U.S. DISTRICT COURT
EASTERN DISTRICT ARKANSAS

MAR 24 2022

TAMMY H. DOWNS, CLERK
By: _____
DEP CLERK

IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
NORTHERN DIVISION

JOSH DAWSON, individually and
On behalf of all others similarly
situated                                                                               PLAINTIFF

v.                        Case No. 3:22-cv-00072-BSM

D&H CONTRACTING INC.                                           DEFENDANT

**ORIGINAL CLASS ACTION COMPLAINT**

This case assigned to District Judge Miller
and to Magistrate Judge Ray

COMES NOW Josh Dawson, individually and on behalf of all others similarly situated, by and through his attorney Chris Burks of WH LAW, for his Class Action Complaint against D&H Contracting Inc., he does hereby state and allege as follows:

## I. Introduction

1. Plaintiff Josh Dawson worked for the Defendant for two years. He was terminated in September 2021 after testing positive for marijuana on a random drug test, despite the Defendant have advanced knowledge and information that the Plaintiff was a medical marijuana patient.

2. Specifically, Plaintiff Dawson was denied employment in a non-safety-sensitive position solely because of his medical marijuana use away from work, in direct contravention of Amendment 98 to the Arkansas Constitution.

3. The voters of Arkansas overwhelmingly passed Amendment 98 to their Constitution, which requires that "an employer shall not discriminate against" an "employee…based upon the employee's status as a qualifying [medical marijuana] patient."

4. Under Amendment 98, employers can have a "drug testing program," can decline to hire applicants or can fire employees based on use of drugs "on premises," and can decline to

hire medical marijuana patients or fire employees who fail a drug screen for drugs other than marijuana. Employers can also decline to hire or fire a medical marijuana patient in a "safety-sensitive position."

5. However, employers cannot decline to hire or fire a medical marijuana patient for a non-safety-sensitive position because of a positive marijuana test away from work.

6. Yet that is exactly what Defendant did to Plaintiff.

## II. Jurisdiction and Venue

7. Plaintiff is an individual resident of Lawrence County, Arkansas.

8. The incidents giving rise to this cause of action occurred in Lawrence County, Arkansas.

9. Defendant D&H Contracting Inc. is a for-profit corporation that is able to be served by its Registered Agent William K. Rowsey at 160 Lawrence 223 Road, Black Rock, AR 72415.

10. This is a cause of action against Defendant for violations of Amendment 98 to the Arkansas Constitution and the Arkansas Civil Rights Act (hereafter called "ACRA") A.C.A. §§ 16-123-107(a)(1) and -105.

11. This Court has jurisdiction over this cause of action under A.C.A. §16-123-105, and venue properly lies in this county under the provisions of A.C.A. §16-60-108 and A.C.A. §16-60-116.

## III. Factual Allegations

12. Plaintiff Josh Dawson was employed by Defendant from August 12, 2019 to September 13, 2021 as a utility pole climber.

13. The utility pole climber position was not listed as safety-sensitive in writing on the application for the position, nor in the job description for the position.

14. In May 2021, the Plaintiff was sent for a random drug test.

15. The Plaintiff informed the Defendant at this time that he was a medical marijuana patient.

16. The Defendant informed him that it did not matter if he had a card because their insurance would not cover him.

17. The Plaintiff tested positive for marijuana on the May 2021 drug test.

18. Regardless of the fact that the utility pole climber position was not designated in writing by the Defendant as safety sensitive, Plaintiff was suspended for one week without pay after testing positive for marijuana. The Defendant also refused to pay his profit-sharing bonus due to his positive test results.

19. After the one-week suspension, Plaintiff returned to work in the utility pole climber position. He performed all the duties and responsibilities of this position until September 2021.

20. In September 2021, four months after his first drug test, the Plaintiff was informed he would have to take another random drug test.

21. The Plaintiff reminded the Defendant that he was a medical marijuana patient and would test positive for marijuana.

22. He tested positive for marijuana on the second drug test.

23. Despite their knowledge that Plaintiff Dawson only tested positive for marijuana, that he was a medical marijuana patient, and that he was in a non-safety-sensitive position, he was immediately terminated by the Defendant for testing positive for marijuana.

24. Defendant had knowledge that the Plaintiff was a medical marijuana patient for several months of his employment. Defendant did not take any actions to prohibit the Plaintiff's use of medical marijuana outside work, nor did they inform him that this was a safety-sensitive position that prohibited the use of medical marijuana.

25. Plaintiff Dawson was thus denied employment for his status as qualifying medical marijuana patient.

26. Plaintiff Dawson was unable to find equivalent employment for some time afterwards.

27. Defendant was at all relevant times an employer within the meaning of the ACRA and Arkansas Constitution.

28. Defendant intentionally terminated Plaintiff's employment because of his medical marijuana patient status despite their knowledge of the law prohibiting such discrimination and knowledge of Plaintiff's status as a qualifying patient.

29. Merely because Defendant had a drug-testing policy requiring random drug tests and a written policy identifying the company as a drug free workplace does not mean the Defendant can decline to hire or fire a medical marijuana patient for a non-safety-sensitive position because of a positive marijuana test away from work.

30. The utility pole climber position was not listed as safety-sensitive in writing on the application for the position, nor in the job description for the position.

31. The Plaintiff informed the Defendant four months prior to his termination that he was a medical marijuana patient and Defendant took no action to terminate him at that time, nor did they inform him that his position was designated as safety-sensitive.

32. Plaintiff's status as a medical marijuana patient did not prevent or inhibit him from doing his job, as demonstrated by the fact that he remained employed by the Defendant for months after he informed them that he was a medical marijuana patient.

### IV. First claim for relief
### Individual violations of Amendment 98
### to the Arkansas Constitution

33. Plaintiff repeats and realleges all the preceding paragraphs of this Complaint as if fully set forth in this section.

34. Defendant deprived Plaintiff of his rights, privileges, and immunities as set forth in Amendment 98 to the Arkansas Constitution and engaged in unlawful employment practices in violation of Ark. Code Ann. § § 16-123-101, *et seq.*

35. Specifically, Defendant discriminated against the employee Plaintiff Dawson because of his status as qualifying medical marijuana patient.

36. At all relevant times, Plaintiff could perform the essential functions of the position to which he was hired, as demonstrated by the fact that he notified the Defendant of his status as a medical marijuana card patient in May 2021 and remained employed with the Defendant until September 2021.

37. However, Plaintiff Dawson was later denied employment because of his status as a qualifying medical marijuana patient.

38. Plaintiff did not possess, smoke, ingest, or otherwise engage in the use of marijuana while on the premises of the employer or during the hours of employment. Nor was Plaintiff under the influence of marijuana while on the premises of the employer or during the hours of employment.

39. Amendment 98 to the Arkansas Constitution makes clear that merely because Defendant has a drug-testing policy requiring random drug tests and a drug-free workplace does not mean Defendant can fire or decline to hire a medical marijuana patient for a non-safety-sensitive position because of a positive marijuana test away from work.

40. The exact text of the relevant portion of Section 3 of Amendment 98 reads that:

(f)(3)(A) An employer shall not discriminate against an applicant or employee in hiring, termination, or any term or condition of employment, or otherwise penalize an applicant or employee, based upon the applicant's or employee's past or present status as a qualifying patient or designated caregiver.

    (B) A cause of action shall not be established against an employer based upon, and an employer is not prohibited from, any of the following actions:

> (i) Establishing and implementing a substance abuse or drug-free workplace policy that may include a drug testing program that complies with state or federal law and taking action with respect to an applicant or employee under the policy;
>
> (ii) Acting on the employer's good faith belief that a qualifying patient:
>
>> (a) Possessed, smoked, ingested, or otherwise engaged in the use of marijuana while on the premises of the employer or during the hours of employment; or
>>
>> (b) Was under the influence of marijuana while on the premises of the employer during the hours of employment, provided that a positive test result for marijuana cannot provide the sole basis for the employer's good faith belief; or
>
> (iii) Acting to exclude a qualifying patient from being employed in or performing a safety sensitive position based on the employer's good faith belief that the qualifying patient was engaged in the current use of marijuana.

41. Section (f)(3)(B)(i) does allow a drug-free workplace policy and drug testing, but as sections (3)BD)(ii) and (iii) explain, that drug testing and drug-free workplace policy only applies to *on premises* marijuana influence by qualified patients, and employers can exclude current medical marijuana users *only* from designated safety sensitive positions.

42. The Arkansas Supreme Court has consistently made clear that law "should be construed so that no word is void, superfluous, or insignificant, and meaning and effect must be given to every word contained therein, if possible, see *Locke v. Cook*, 245 Ark. 787, 434 S.W.2d 598 (1968)" *AT&T Communications of the Southwest, Inc. v. Arkansas Public Service Commission*, 67 Ark. App. 177, 189 (Ark. Ct. App. 1999).

43. To read that Amendment 98 allows a qualify medical marijuana patient to be fired or excluded from employment for a positive marijuana drug test merely because an employer has a drug testing and drug free workplace policy under Section(f)(3)(B)(i) completely renders Sections (3)(a), and (3)(B)(ii)-(iii) meaningless.

44. Instead, the general Section(3)(B)(i) must be read in harmony with the more specific Sections (3)(B)(ii) and (iii) to delineate the exception to the protections of Section (3)(a).

45. Further, section 3(C)(vi)'s protection for "refusing to hire an applicant" under (f)(3) is not a categorical exception to the plain meaning of (f)(3)(A) that "an employer shall not discriminate against an applicant…," nor is it an addition to the list of prohibited causes of action in Section (3)(B).

46. Instead, section 3(C)(vi) protection is simply an authorized action an employer is allowed to take for applicants who fail the requirements of Section (3)(A)-(B).

47. For an illustrative example of the section 3(C)(vi) protection for employers, an applicant for a non-safety sensitive position would not be protected if they failed a pre-employment test for the presence of cocaine. That applicant could not sue even if they were a medical marijuana patient.

48. Likewise, if a job applicant failed a marijuana test but it was for a safety sensitive position, that applicant could not sue the employer under (3)(B)(iii).

49. However, an employer cannot fire or decline to hire a medical marijuana patient for a non-safety-sensitive position because of a positive marijuana test away from work because of Sections (3)(B)(ii) and (iii) that outline the protections of Section (3)(a).

50. To find otherwise is to also render the words "safety sensitive" (3)(B)(iii) meaningless.

51. Even so, Defendant's policy is that it fires anyone, including qualifying medical marijuana card holders, who test positive for marijuana.

52. Further, the Governor of Arkansas at no point was given power by the Legislature to issue a temporary Executive Order overriding Act 593 of the 2017 General Assembly because of COVID, as such an executive order could only apply, if at all, to statutes, regulations, or policies, and not to Act 593 of 2017 which is a Constitutional Amendment.

53. In other words, it is not a defense to this action that any of Governor Hutchinson's executive orders overrode Arkansas medical marijuana patient employment law, because that law is Amendment 98 to the Arkansas Constitution, which no Governor can override by any Executive Order.

54. In sum, the effect of the practices complained of above has been to deprive Plaintiff of equal employment opportunities and otherwise adversely affect their status as an employee because of his qualifying medical marijuana patient status.

55. The unlawful employment practices complained of above were and are intentional.

56. The unlawful employment practices complained of above were done with reckless indifference to the constitutional and statutorily protected rights of Plaintiff.

57. Pursuant to the Arkansas Civil Rights Act, as amended, Plaintiff is entitled to, and they seek, the sum of his back pay lost wages or salary, benefits and/or other compensation denied or loss to him by reason of Defendant's violations of the Arkansas Constitution and ACRA, plus any interest he is entitled to for these causes because Defendant's violations were malicious and Defendant had no reasonable grounds for believing that its actions were not in violation of the ACRA.

58. As a direct and proximate result of Defendant's violations of the Arkansas Constitution and Arkansas Civil Rights Act, Plaintiff has suffered the following injuries and damages:

   a. Plaintiff Dawson has lost a significant sum of income in the past and will continue to do so in the future;

   b. He has lost the fringe benefits of his employment;

   c. Plaintiff Dawson is unable to procure equivalent employment due to having been fired;

   d. Plaintiff has incurred and will incur substantial attorneys' fees;

for all of which he should be compensated.

59. Plaintiff should be awarded attorneys' fees pursuant to A.C.A. §16-123-105.

## V. Second claim for relief:
## Class action violation of Amendment 98 to the Arkansas Constitution

60. Plaintiff repeats and realleges all the preceding paragraphs of this Complaint as if fully set forth in this section.

61. This is also a class action under Rule 23 of the Federal Rules of Civil Procedure. Plaintiff Dawson is members of a class of employees and applicants who were denied employment in violation of Amendment 98 to the Arkansas Constitution.

62. Plaintiff asserts violations of Amendment 98 on behalf of a class of all persons who were denied or fired from employment by Defendant solely on the basis of their medical marijuana patient status from the date of one year prior to the date of the filing of this lawsuit, through the time of the trial of this case.

63. The Class is so numerous that joinder of all members is impractical. While the exact number and identities of Class members are unknown at this time, and can only be ascertained through appropriate discovery, Plaintiff believe that at least forty (40) but as many as one-hundred (100) putative class members have applied to work for Defendant but been denied employment, or worked for Defendant and were denied continued employment, as described herein, during the applicable statutory period.

64. This litigation is properly brought as a class action because of the existence of questions of fact and law common to the Class which predominate over any questions affecting only individual members, including:

   a. The policy of Defendant to fire and not hire medical marijuana patients who test positive for marijuana only;

    b. Whether Plaintiff and members of the Class were not hired for that reason alone; and

    c. Whether the back pay owed to Plaintiff and members of the Class can easily be calculated by the rate of pay of the positions applied for or worked in and the date of denial or firing.

65. This litigation is properly brought as a class action because Plaintiff's claims are typical of the claims of the members of the Class, inasmuch as all such claims arise from Defendant's standard policies and practices, as alleged herein. Like all Class members, Plaintiff was injured by Defendant's policies and practices of firing and failure to hire qualified medical marijuana patients.

66. Plaintiff has no interests antagonistic to the interests of the other members of the Class. Plaintiff is committed to the vigorous prosecution of this action and has retained competent counsel experienced in class litigation. Accordingly, Plaintiff is an adequate representative and will fairly and adequately protect the interests of the Class.

67. A class action is an appropriate and superior method for the fair and efficient adjudication of the present controversy given the following factors:

    a. Common questions of law and/or fact predominate over any individual questions which may arise, and, accordingly, there would accrue enormous savings to both the Court and the Class in litigating the common issues on a class-wide instead of on a repetitive individual basis;

    b. Despite the relatively small size of individual Class members' claims, their aggregate volume, coupled with the economies of scale inherent in litigating similar

       claims on a common basis, will enable this case to be litigated as a Class action on a cost-effective basis, especially when compared with repetitive individual litigation; and

   c. No unusual difficulties are likely to be encountered in the management of this class action in that all questions of law and/or fact to be litigated at the liability stage of this action are common to the Class.

68. Plaintiff is aware of no members of the proposed class who have an interest in individually controlling the prosecution of separate actions; neither is Plaintiff aware of any other litigation concerning this particular controversy.

69. Class certification is fair and efficient because prosecution of separate actions by individual Class members would create a risk of differing adjudications with respect to such individual members of the Class, which as a practical matter may be dispositive of the interests of other members not parties to the adjudication, or substantially impair or impede their ability to protect their interests.

70. The class is defined as all applicants and employees who were denied or fired from employment by Defendant in Arkansas, solely on the basis of their medical marijuana patient status from the date of one year prior to the date of the filing of this lawsuit.

71. Plaintiff demands a jury trial.

WHEREFORE, Plaintiff Josh Dawson, individually and on behalf of all others similarly situated, prays for an award of a class action; for judgment against Defendant; for a jury trial; for attorneys' fees and costs; for punitive and constitutional damages; and for all other proper relief.

Respectfully submitted,

**JOSH DAWSON, Individually and on Behalf of All Others Similarly Situated, PLAINTIFF**

WH Law | We Help
1 Riverfront Pl. – Suite 745
North Little Rock, AR 72114
(501) 891-6000

By:   *Chris Burks*
      Chris Burks (ABN: 2010207)
      chris@wh.law